UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DANIEL CLAY WILKERSON, SR.**                    **CIVIL ACTION**

**versus**                                        **NO. 07-3491**

**LA. DEPT. OF PUB. SAFETY AND**                  **SECTION: "F" (3)**
**CORR. - RICHARD STALDER, SECRETARY**

**REPORT AND RECOMMENDATION**

    This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Daniel Clay Wilkerson, Sr., is a state prisoner incarcerated at the Sherman Walker Correctional Center, Laplace, Louisiana. On November 17, 2003, pursuant to a plea agreement, he pleaded guilty to indecent behavior with a juvenile in violation of Louisiana law.[2] On that same date, he was sentenced to a term of seven years imprisonment; however, execution of that sentence was suspended and he was placed on supervised probation for a term of five years.[3] On December 6, 2004, his probation was revoked and five years of his seven-year sentence was made executory.[4]

On or after June 22, 2005, petitioner filed with the state district court an application for post-conviction relief[5] which was denied on August 11, 2005.[6]

On or after July 22, 2005, petitioner filed with the state district court a "Motion for Review of Plea"[7] which was also denied on August 11, 2005.[8]

---

[2] State Rec., Vol. II of II, transcript of November 17, 2003; State Rec., Vol. II of II, minute entry dated November 17, 2003.

[3] State Rec., Vol. II of II, transcript of November 17, 2003; State Rec., Vol. II of II, minute entry dated November 17, 2003; State Rec.,Vol. I of II, Felony Sentencing.

[4] State Rec., Vol. II of II, transcript of December 6, 2004.

[5] State Rec., Vol. II of II.

[6] State Rec., Vol. II of II, Order dated August 11, 2005.

[7] State Rec., Vol. II of II.

[8] State Rec., Vol. II of II, Order dated August 11, 2005.

On or about August 25, 2005, petitioner filed with the state district court a "Motion for Withdrawal of Plea Bargain"[9] which was denied on September 6, 2005.[10]

On or after October 17, 2005, petitioner filed with the state district court a "Motion to Correct Illegal Sentence"[11] which was denied on January 19, 2006.[12] His related writ application was denied by the Louisiana First Circuit Court of Appeal on May 1, 2006.[13] The Louisiana Supreme Court likewise denied a related writ application on May 11, 2007,[14] as well as an application for reconsideration on August 31, 2007.[15]

On or after June 25, 2006, petitioner filed with the state district court a "Motion for Consideration"[16] which was denied on July 27, 2006.[17]

---

[9] State Rec., Vol. II of II.

[10] State Rec., Vol. II of II, Order dated September 6, 2005.

[11] State Rec., Vol. II of II.

[12] State Rec., Vol. II of II, transcript of January 19, 2006, p. 12.

[13] State v. Wilkerson, No. 2006 KW 0178 (La. App. 1st Cir. May 1, 2006) (unpublished); State Rec., Vol. II of II.

[14] State *ex rel.* Wilkerson v. State, 955 So.2d 1272 (La. 2007) (No. 2006-KW-2116); State Rec., Vol. II of II.

[15] State *ex rel.* Wilkerson v. State, 962 So.2d 435 (La. 2007) (No. 2006-KW-2116).

[16] State Rec., Vol. II of II.

[17] State Rec., Vol. II of II, Denial of Motion to Reconsider Sentence.

Petitioner then filed with the state district court a "Motion for Modification of Sentence" on or about November 13, 2006,[18] and a "Motion to Amend" on or about December 17, 2006.[19] Those motions were denied on February 6, 2007.[20]

On June 9, 2007, petitioner filed the instant federal application for *habeas corpus* relief. In support of his application, petitioner claims:

1. The terms of petitioner's plea bargain have been violated;

2. Petitioner's conviction was obtained in violation of the Double Jeopardy Clause; and

3. Petitioner was denied the assistance of counsel in his state post-conviction proceedings.[21]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact,

---

[18] State Rec., Vol. II of II.

[19] State Rec., Vol. II of II.

[20] State Rec., Vol. II of II, Order dated February 6, 2007.

[21] The state asserts without explanation that petitioner's federal application is untimely. The merit of that unexplained assertion is not self-evident from the record before the Court, in that petitioner's claims appear to involve factual predicates that arose at some unknown time long after his conviction and sentence became final. <u>See</u> 28 U.S.C. § 2244(d)(1)(D). Because the record does not necessarily support the state's unexplained assertion, and because petitioner's claims clearly have no merit in any event, the undersigned recommends that the application simply be considered and rejected on the merits.

questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

- 5 -

<u>Violation of Plea Bargain</u>

Petitioner claims that, as part of his plea bargain, it was agreed that he would be eligible to earn "good time" credit toward diminution of his sentence. He claims that the terms of the agreement have been violated because the prison authorities have refused to allow him to earn "good time" credit.

Petitioner has presented no evidence whatsoever that his plea was premised on an agreement or understanding that he would be eligible to earn "good time" credit. The terms of the plea bargain were expressly stated on the record and no mention was made regarding "good time" eligibility:

> THE COURT:
> Ms. Sanders, could you state for the record what the proposed plea agreement is?
>
> MS. SANDERS [the prosecutor]:
> Yes, Your Honor. Your Honor, he would be sentenced to serve seven years with the Department of Corrections. That sentence would be suspended and he would be placed on five years supervised probation. As a condition of his probation, he is to have no contact with the victim or the victim's immediate family. He will be given credit for time served in the parish jail, which is 142 days, and he will have to register as a sex offender.
>
> THE COURT:
> Any fine or anything like that?
>
> MS. SANDERS:
> That's up to the court, Judge.
>
> MR. LEDET [defense counsel]:
> We have not discussed that, Your Honor, and I did not discuss that as an element of the plea agreement with him.

>    MS. SANDERS:
>       Whatever the court decides, Judge.
>
>    THE COURT:
>       Well, what was the agreement?
>
>    MR. LEDET:
>       The agreement is exactly what Ms. Sanders just explained, Your Honor.
>
>    THE COURT:
>       All right.[22]

When questioned by the judge, petitioner acknowledged that those were in fact the terms of the agreement:

>    Q   You heard the plea agreement read by Ms. Sanders. Is that your understanding of the plea agreement?
>
>    A   Yes, sir.
>
>    Q   Do you accept the terms and conditions of that plea agreement?
>
>    A   Yes, sir.[23]

When petitioner's probation was subsequently revoked and the sentence was made executory, there likewise was no mention that the plea agreement involved a provision concerning eligibility to earn "good time" credit.

"The petitioner in a habeas corpus proceeding has the burden of proof to establish sufficient facts to warrant a finding of denial of constitutional rights." Tyler v. Beto, 391 F.2d 993,

---

[22] State Rec., Vol. II of II, transcript of November 17, 2003, pp. 5-6.

[23] State Rec., Vol. II of II, transcript of November 17, 2003, p. 8.

- 7 -

995 (5th Cir. 1968); see also Williford v. Estelle, 672 F.2d 552, 555 (5th Cir. 1982) ("The petitioner in a habeas corpus proceeding bears the burden of proof on his right to relief." ); Baldwin v. Blackburn, 653 F.2d 942, 947 (5th Cir. 1981); Jones v. Estelle, 632 F.2d 490, 492 (5th Cir. 1980). In light of the foregoing, it is evident that petitioner has failed to meet his burden to establish that his plea was in fact premised on an agreement or understanding that he would be eligible to earn "good time" credit.  Therefore, he has not shown that the plea agreement has been violated and, accordingly, his claim necessarily fails.

Out of an abundance of caution, the Court makes an additional observation with respect to this claim.  Although there is no evidence that the plea bargain incorporated a guarantee of "good time" eligibility, when imposing sentence in the original proceeding on November 17, 2003, the judge did state:  "The Court does not impose restrictions concerning diminution of sentence."[24]  However, to the extent that petitioner is arguing that the comment guaranteed him "good time" eligibility and that, therefore, his sentence is being executed in a manner contrary to what was imposed, that claim also fails.

At the post-conviction hearing on January 19, 2006, the judge stated that his comment regarding diminution of sentence was being misinterpreted by petitioner.  In denying post-conviction relief, the judge explained:

> The Court would note, though, when it did sentence Mr. Wilkerson to his initial sentence, the Court did not impose any restrictions regarding diminution of sentence.  The Court notes that

---

[24]  State Rec., Vol. II of II, transcript of November 17, 2003, p. 12.  Similarly, the written order of sentencing stated:  "The court does not impose restrictions concerning diminution of sentence for good behavior."  State Rec.,Vol. I of II, Felony Sentencing.

- 8 -

> Revised Statute 15:537 does put a restriction on indecent behavior of a juvenile under 14:81. 14:81 can be suspended, which Mr. Wilkerson did get the benefit of a suspended sentence.
>
> However, upon being revoked, Mr. Wilkerson would not be eligible for diminution of sentence in accordance with 15:537, which provides that anyone convicted or pleads guilty to when an adjudication has been deferred or withheld for 14:81, which is what Mr. Wilkerson did, and is sentenced to imprisonment for a stated number of years and months, that person shall not be eligible for diminution of sentence for good behavior.
>
> The Court is not imposing any restriction, which the Court could do on its own right on any charge. This specific crime, the statute controls whether he's eligible for diminution of sentence. He was offered a suspended sentence, which he had the benefit of. By his own actions, he has resulted in his sentence being revoked and execution of the sentence being imposed.
>
> The Court does not believe this is an illegal sentence. The Court does not believe that his plea agreement was vitiated in any form or substance, as a result of any statement by the Court or promise of any type of time he would serve in jail. Therefore, the Court would deny Mr. Wilkerson's motion to correct a sentence, and the sentence will remain as it is in effect.[25]

The state's appellate courts likewise denied petitioner relief on this claim.[26]

Whether the state court rulings on this issue comported with state law is an issue that this Court need not, and does not, reach. Mere violations of state law do not warrant federal *habeas corpus* relief; rather, such relief may be granted only to remedy violations of the Constitution and laws of the United States. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983). In this case,

---

[25] State Rec., Vol. II of II, transcript of January 19, 2006, pp. 11-12.

[26] State v. Wilkerson, No. 2006 KW 0178 (La. App. 1st Cir. May 1, 2006) (unpublished); State *ex rel.* Wilkerson v. State, 955 So.2d 1272 (La. 2007) (No. 2006-KW-2116); State Rec., Vol. II of II.

petitioner simply has not established that the state courts' actions with respect to this claim violated *federal* law.

## Double Jeopardy

Petitioner next claims that his "conviction [was] obtained by a violation of the protection against double jeopardy."[27]  He states his claim as follows:

> A condition of the sentence is the court does not impose restriction concerning diminution of sentence for good behavior by this condition ordered in the court minutes I would only serve one half of my sentence – the Dept. of Corr. has changed my sentence restricting me of any diminutions of sentence resulting in me serving twice the amount of the original sentence.[28]

As previously explained, the sentencing judge has made clear that the Department of Public Corrections and Safety is not in fact executing petitioner's sentence in a manner contrary to what was ordered.  However, in any event, the Court notes that the Double Jeopardy Clause is not implicated by petitioner's claim.

The protection against double jeopardy is enshrined in the Fifth Amendment and made enforceable against the states through the Fourteenth Amendment.  Benton v. Maryland, 395 U.S. 784, 794 (1969); Rogers v. Lynaugh, 848 F.2d 606, 611 (5th Cir. 1988).  The United States Supreme Court has held:

> That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second

---

[27]  Rec. Doc. 1, p. 4.

[28]  Rec. Doc. 1, p. 4.

        prosecution for the same offense after conviction. And it protects
        against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted), overruled in part on other grounds, Alabama v. Smith, 490 U.S. 794, 802-03 (1989); see also Department of Revenue v. Montana, 511 U.S. 767, 769 n.1 (1994). Petitioner's inability to earn "good time" credit toward an early release simply does not implicate any of those three protections. See Wilder v. Department of Correction, Nos. 95-1960 and 95-2018, 1996 WL 374983 (1st Cir. July 5, 1996); Strickland v. Quarterman, Civ. Action No. H-07-0506, 2007 WL 2409220, at *8 (S.D. Tex. Aug. 20, 2007); Russell v. Cockrell, No. 3:01-CV-1425-D, 2003 WL 21750862, at *8 (N.D. Tex. July 25, 2003). This claim has no merit.

Denial of Counsel

        On January 19, 2006, the state district court held a hearing on petitioner's "Motion to Correct Illegal Sentence" filed on or after October 17, 2005. An indigent defender in the courtroom at that time informed the court that his office was not representing petitioner in connection with the motion, whereupon the judge told petitioner: "So, at the moment, and I'm not sure if you're entitled to representation for these types of events. So you'll be representing yourself in this matter."[29] Petitioner essentially claims that he was wrongly denied assistance of counsel in that proceeding. However, it is clear that a state prisoner has no federal constitutional right to counsel in state post-conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551, 555-57 (1987); *In re* Goff, 250 F.3d 273, 275 (5th Cir. 2001). Therefore, necessarily, he cannot be granted federal

---

[29] State Rec., Vol. II of II, transcript of January 19, 2006, p. 2.

*habeas corpus* relief based on the failure to appoint counsel in such proceedings. <u>Nunez v. McKune</u>, 816 F.Supp. 660, 661-62 (D. Kan. 1993).

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Daniel Clay Wilkerson, Sr., be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this nineteenth day of November, 2007.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**